|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |
| 6 | UNITED STATES DISTRICT COURT |
| 7 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RACHEL WASHINGTON, executor of the estate of Isaiah Washington,

Plaintiff(s),

v.

THE BOEING COMPANY,

Defendant(s).

CASE NO. C24-0059-KKE

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

This matter comes before the Court on Defendant's motion to dismiss. Dkt. No. 13. The Court has considered the parties' briefing[1] and the record, and has heard the oral argument of counsel. For the reasons explained here, the Court grants the motion with leave to amend the complaint.

## I.   BACKGROUND[2]

At the time of his death on November 21, 2022, Isaiah Washington ("Washington") was an employee of Defendant The Boeing Company ("Boeing"), working on the assembly line in the Renton facility. Dkt. No. 1-1 ¶¶ 1.1, 3.1, 3.18. As of November 21, 2022, Washington had been

---

[1] This order refers to the parties' briefing using the CM/ECF page numbers, and refers to the corrected version of Boeing's motion to dismiss (Dkt. No. 19-1).

[2] This section is based primarily on facts alleged in the complaint and the allegations are assumed to be true for purposes of resolving this motion.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - 1

involved in a sexual relationship with his supervisor, Rachel Pettit, for a few months. *Id*. ¶¶ 3.4, 3.6. Pettit was also involved in a sexual relationship with one of Washington's co-workers on the assembly line, Ralph O'Connor, and had been for about four years. *Id*. ¶ 3.5.

O'Connor learned of Washington's relationship with Pettit in September 2021, when he "discovered Mr. Washington's car at Pettit's home and became angry, banging on the door and causing a scene." Dkt. No. 1-1 ¶ 3.7. O'Connor had previously been disciplined at work for angry, threatening behaviors toward other employees, and "had been trying to get help for mental health issues from Boeing, but Boeing did not do anything." *Id*. ¶¶ 3.9, 3.10, 3.16. In the days just before November 21, 2022, several Boeing employees (including Boeing managers and supervisors) told Pettit that O'Connor had sent troubling text messages stating that he was upset about Pettit's relationship with Washington, and that he wanted to die and "pull the trigger." *Id*. ¶ 3.11. These employees told Pettit that they were concerned for her safety and recommend that she change her work schedule to avoid contact with O'Connor. *Id*. ¶ 3.12.

On November 21, 2022, O'Connor followed Washington on his way to work and waited for him to park his car in an offsite parking lot. Dkt. No. 1-1 ¶ 3.18. O'Connor shot and killed Washington as he walked from his car to work, and then killed himself. *Id*. A Boeing corporate investigator contacted the Renton Police Department on November 23, 2022, stating that he was assigned to investigate this incident "on the Boeing side." *Id*. ¶ 3.22.

Plaintiff Rachel Washington, the executor and personal representative of Washington's estate, filed this lawsuit in King County Superior Court in December 2023, and Boeing removed the case to this Court in January 2024. *See* Dkt. No. 1. The complaint alleges two causes of action, for negligence and race/sex discrimination. Dkt. No. 1-1 ¶¶ 4.1–4.6. Boeing subsequently moved to dismiss (Dkt. No. 13), and the Court now turns to consider that motion.

//

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - 2

## II. ANALYSIS

### A. Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

### B. The Complaint Does Not State a Claim for Negligence.

The complaint alleges a cause of action for negligence, asserting that "Boeing was negligent, including negligent retention, when it failed to take actions that ultimately resulted in Mr. Washington's death. This includes, but is not limited to, retaining O'Connor with the knowledge of his unfitness, and/or failing to use reasonable care to discover it before retaining him." Dkt. No. 1-1 ¶ 4.2.

A negligent retention claim has two elements: "An employer may be liable for harm caused by an incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the plaintiff's injuries." *Lynn v. Lab. Ready, Inc.*, 151 P.3d 201, 207 (Wash. Ct. App. 2006) (emphasis omitted) (quoting *Betty Y. v. Al-Hellou*, 988 P.2d 1031, 1032–33 (Wash. Ct. App. 1999)). Boeing argues that the complaint does not allege facts that

support either element of a negligent retention claim, and that the claim should therefore be dismissed.  Dkt. No. 19-1 at 11–15.

At oral argument, Plaintiff's counsel suggested that as soon as Boeing had notice that Pettit was involved in sexual relationships with two of her subordinates, it should have separated Pettit, O'Connor, and Washington, rather than continue to schedule them to work together at the same facility on the same schedule,[3] particularly in light of O'Connor's previous aggressive behavior.  The complaint does not indicate *when* Boeing knew or should have known of Pettit's relationships with O'Connor and Washington, however, nor does the complaint detail the nature of O'Connor's previous behavior that gave rise to workplace discipline, such that it is not clear that Boeing was on notice that O'Connor had any propensity for violence.  *See* Dkt. No. 1-1 ¶¶ 3.9–3.10, 3.13–3.14.  Those deficiencies support granting Boeing's motion to dismiss because as currently drafted, the complaint does not allege facts that would support either element of a negligent retention claim.

Plaintiff requests leave to amend the complaint to add allegations indicating that Boeing knew or should have known of O'Connor's unfitness and that Boeing should have separated Washington from O'Connor.  *See, e.g.*, Dkt. No. 16 at 18.  Because such amendments could cure the deficiencies in the complaint as currently drafted, the Court will give Plaintiff leave to amend.

**C.     The Complaint Does Not State a Claim for Race- or Sex-Based Discrimination.**

The complaint also alleges that Boeing discriminated against Washington due to his race and sex, by "knowingly permitt[ing] a supervisor to continue to have a sexual relationship with Mr. Washington, Pettit's subordinate."  Dkt. No. 1-1 ¶ 4.5.

---

[3] Boeing's motion suggests that Plaintiff cannot show that its retention of O'Connor was the proximate cause of Washington's injuries because "O'Connor would have acted [to injure Washington] regardless of his employment status.  He knew what time Mr. Washington started his shift, what sort of car he drove, and where he parked his car."  Dkt. No. 19-1 at 15.  Plaintiff's counsel noted at oral argument that if Boeing had transferred Washington to a different facility or changed his schedule, O'Connor would not have had such ready access to Washington.

The Washington Law Against Discrimination ("WLAD") prohibits discrimination in the terms or conditions of employment on account of *inter alia* race or sex. WASH. REV. CODE § 49.60.180. Under the burden-shifting analysis applicable to WLAD claims, the plaintiff bears the initial burden to show that "(1) [the plaintiff] is a member of a protected group, (2) [the plaintiff] was qualified for [the plaintiff's] position (i.e. satisfactorily performing [the] job), (3) [the plaintiff] suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorabl[y], or other circumstances surrounding the adverse action give rise to an inference of discrimination." *Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. 2:14-cv-00455RSM, 2015 WL 402782, at *3 (W.D. Wash. Jan. 29, 2015). As an alternative to the burden-shifting analysis, a plaintiff may demonstrate the employer's discriminatory intent by producing "direct or circumstantial evidence" of discrimination. *Id*.

Boeing argues that the complaint fails to meet the initial burden because it does not allege facts indicating that Washington suffered an adverse employment action: there is no allegation that Boeing's actions or inactions impacted Washington's compensation, job terms, work conditions, or privileges of employment. *See* Dkt. No. 19-1 at 15–18. And although the complaint describes Washington as a Black male (Dkt. No. 1-1 ¶ 4.5), there is no allegation of a connection between either of those characteristics and Boeing's conduct. *See* Dkt. No. 19-1 at 17.

In opposition, Plaintiff relies on allegations in the complaint that O'Connor harassed Washington due to his sexual relationship with Pettit and that a Boeing manager knew about that harassment but did not intervene. Dkt. No. 16 at 20 (referencing Dkt. No. 1-1 ¶¶ 3.14, 3.17). To the extent that Washington experienced harassment because he had a sexual relationship with Pettit, that harassment is not because of Washington's sex and thus would not give rise to a WLAD claim. *See Doe v. State, Dep't of Transp.*, 931 P.2d 196, 199 (Wash. App. 1997) (explaining that

"[t]he term 'sex' as used in [the WLAD] refers to the status of being male or female" and "mean[s] a classification rather than activity of a sexual nature generally").

Moreover, as noted by Boeing (Dkt. No. 20 at 15), the complaint does not allege that O'Connor's harassment of Washington affected the terms and conditions of Washington's employment, such that it would give rise to a WLAD claim for hostile work environment even if the harassment was based on a protected characteristic. "A hostile work environment exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." *Laying v. Twin Harbors Grp. Home Ass'n*, No. 05-5260, 2006 WL 197127, at *3 (W.D. Wash. Jan. 24, 2006) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)).

To the extent that Plaintiff's WLAD claim is based on a disparate treatment theory, it appears to be supported by the allegations that Washington was treated less favorably than a White person because he was not offered an opportunity to change shifts to avoid O'Connor, and that his co-workers did not check on his safety, but they did check on O'Connor and Pettit during the weekend before the shooting.[4]  Dkt. No. 16 at 20–21.  The complaint alleges both that co-workers (including supervisors and managers) recommended that Pettit change shifts to avoid O'Connor, but also that she was *not* instructed to change shifts to avoid O'Connor. *See* Dkt. No. 1-1 ¶¶ 3.12, 3.20.  At oral argument, Plaintiff's counsel clarified that Pettit *was* offered an opportunity to change shifts after O'Connor discovered her relationship with Washington, but that Plaintiff, at this time, does not know when that offer was made.  Boeing's counsel emphasized in response that

---

[4] Plaintiff's opposition assumes that O'Connor and Pettit are White (Dkt. No. 16 at 20–21), but the complaint does not identify the race of any person other than Washington.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - 6

Plaintiff has cited no authority suggesting that an employer's failure to offer a schedule change constitutes an adverse employment action.

Indeed, the complaint as currently drafted does not allege that Washington experienced an adverse employment action on account of a protected characteristic, and thus fails to state a WLAD claim. But because amendment could cure these deficiencies, as argued in Plaintiff's opposition brief and at oral argument, the Court will give Plaintiff leave to amend.

### III.  CONCLUSION

For these reasons, the Court GRANTS Boeing's motion to dismiss.[5] Dkt. No. 13. Plaintiff's complaint is dismissed without prejudice. Plaintiff may file an amended complaint no later than April 19, 2024.

The parties are ORDERED to submit a proposed case schedule no later than May 3, 2024. *See* Dkt. No. 24 at 11–15 (detailing the parties' disputes over case scheduling while the motion to dismiss was pending).

Dated this 29th day of March, 2024.

Kymberly K. Evanson
United States District Judge

---

[5] Because the Court did not rely on the evidence submitted along with Boeing's reply brief in resolving the motion to dismiss, the Court denies Plaintiff's motion to strike that evidence (Dkt. No. 23) as moot.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND - 8