UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RACHEL WASHINGTON, executor of the estate of Isaiah Washington,<br><br>      Plaintiff(s),<br> v.<br><br>THE BOEING COMPANY,<br><br>      Defendant(s). | CASE NO. C24-0059-KKE<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

  The Court previously granted a motion to dismiss the complaint filed by Defendant The Boeing Company ("Boeing"), with leave to amend. *See* Dkt. No. 27. Plaintiff Rachel Washington timely filed an amended complaint, and Boeing filed a renewed motion to dismiss it for failure to state a claim. Dkt. Nos. 28, 33. Because the Court finds that Plaintiff's amended complaint does not cure deficiencies identified in the Court's previous order, and its deficiencies cannot be cured via further amendment, the Court grants Boeing's motion to dismiss without leave to amend.

//

//

//

//

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

## I. BACKGROUND[1]

At the time of his death on November 21, 2022, Isaiah Washington ("Washington") was an employee of Boeing, working on the assembly line in the Renton plant. Dkt. No. 28 ¶¶ 1.1, 3.1. As of September 21, 2022, Washington (a Black male) had been involved in a sexual relationship with his supervisor, Rachel Pettit (a White female), for a few months. *Id*. ¶¶ 3.2, 3.4, 3.6. At the same time, Pettit was involved in a sexual relationship with one of Washington's co-workers on the assembly line, Ralph O'Connor (a White male), and had been for four years. *Id*. ¶¶ 3.3, 3.5.

O'Connor learned of Washington's relationship with Pettit in September 2022, when he "discovered Mr. Washington's car at Pettit's home [and] became angry, banging on Pettit's door and causing a scene. In his anger, he made threats of harm to both Pettit and Washington." Dkt. No. 28 ¶ 3.7. O'Connor had previously been disciplined at work for threatening behavior toward other employees, and "had been trying to get help for mental health issues from Boeing, but Boeing did not comply with O'Connor's requests." *Id*. ¶¶ 3.13, 3.24. Although Boeing supervisors were aware of a dispute between O'Connor and Washington based on their relationships with Pettit, Boeing "failed to step in or take any action to deescalate the situation." *Id*. ¶ 3.25.

In the days and weeks before November 21, 2022, several Boeing employees (including Boeing managers and supervisors) knew that "O'Connor had made comments that raised concerns for [the] safety of Pettit and Mr. Washington, including threats of harm, based upon O'Connor's previous behavior, including his propensity for violence[.]" Dkt. No. 28 ¶ 3.21. Boeing offered to allow Pettit to change her shifts to avoid O'Connor, but did not extend the same offer to Washington. *Id*. ¶ 3.31.

---

[1] Although the Court summarized the facts alleged in the original complaint in the prior order granting Boeing's motion to dismiss, the Court provides an updated factual summary here, citing the allegations in the amended complaint. Dkt. No. 28.

On November 21, 2022, O'Connor waited for Washington to park his car in a public parking lot before walking to the Boeing plant. Dkt. No. 28 ¶ 3.27. O'Connor shot and killed Washington on a public street while he walked to work, and then O'Connor killed himself. *Id*.

Plaintiff, the executor and personal representative of Washington's estate, filed this lawsuit in King County Superior Court in December 2023, and Boeing removed the case to this Court in January 2024. *See* Dkt. No. 1. Boeing filed a motion to dismiss for failure to state a claim, which the Court granted with leave to amend. Dkt. Nos. 13, 27. Plaintiff filed an amended complaint alleging causes of action for negligence (negligent retention) and race discrimination. Dkt. No. 28 ¶¶ 4.1–4.9. Boeing filed a motion to dismiss the amended complaint for failure to state a claim (Dkt. No. 33), and that motion is now ripe for resolution.[2]

## II.   ANALYSIS

### A.   Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014).

---

[2] This order refers to the parties' briefing using the CM/ECF page numbers.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

**B.      The Amended Complaint Does Not State a Claim for Negligent Retention.**

The amended complaint alleges a cause of action for negligence, asserting that "Boeing's continued retention of O'Connor was the direct and proximate cause of Mr. Washington's injury, specifically, O'Connor's continued employment at Boeing provided O'Connor with the knowledge necessary to stalk, confront, and subsequently gun down Mr. Washington." Dkt. No. 28 ¶ 4.3.

A negligent retention claim has two elements: "An employer may be liable for harm caused by an incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the plaintiff's injuries." *Lynn v. Lab. Ready, Inc.*, 151 P.3d 201, 207 (Wash. Ct. App. 2006). Boeing argues that the complaint does not allege facts that support either element, and that the negligent retention claim must therefore be dismissed. Dkt. No. 33 at 13–20.

Even if the amended complaint could be read to plausibly allege facts that would support Boeing's knowledge of O'Connor's alleged unfitness, the negligent retention claim nonetheless fails for want of causation. The amended complaint alleges that "Boeing's continued retention of O'Connor was the direct and proximate cause of Mr. Washington's injury, specifically, O'Connor's continued employment at Boeing provided [him] with the knowledge necessary to [kill] Washington[,]" because O'Connor knew Washington's commuting route to the Boeing facility. Dkt. No. 28 ¶ 4.3. This allegation overlooks that the amended complaint alleges that O'Connor killed Washington in a public, non-work location while neither man was working, and this allegation indicates that O'Connor was not acting as a Boeing employee at the time of Washington's murder. *See id.* ¶ 3.27. These allegations therefore suggest that Boeing's retention of O'Connor was *not* the proximate cause of Washington's murder, if O'Connor was not acting as

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

Boeing employee nor enjoying any of the benefits of his employment at the time of the murder. Because the murder was not committed by O'Connor *qua* employee, the amended complaint fails to allege facts linking Boeing's retention of O'Connor to O'Connor's murder of Washington.

That Washington's murder did not occur while O'Connor was acting as an employee distinguishes this case from other factual scenarios where plaintiffs and/or courts have contemplated negligent retention claims. *See, e.g.*, *Dold v. Snohomish Cnty.*, 649 F. Supp. 3d 1084 (W.D. Wash. 2022) (police officers killed plaintiff during mental health intervention and plaintiff's estate sued officers' employer); *Hicks v. Klickitat Cnty. Sheriff's Off.*, 515 P.3d 556 (Wash. Ct. App. 2022) (father alleged that a state social worker negligently investigated a claim of abuse of his child, and sued the state for negligent retention); *Preston v. Boyer*, No. C16-1106-JCC-MAT, 2019 WL 8060201 (W.D. Wash. Nov. 27, 2019) (plaintiff alleged a police officer used excessive force causing injuries during an arrest and sued officer's employer for negligent retention); *LaPlant v. Snohomish Cnty.*, 271 P.3d 254, 256 (Wash. Ct. App. 2011) (discussing whether a claim for negligent hiring, training, or supervision arises where an employee acts within the scope of employment, in a case where plaintiff was injured during a police pursuit); *Carlsen v. Wackenhut Corp.,* 868 P.2d 882 (Wash. Ct. App. 1994) (concert attendee was sexually assaulted after asking security guard for help finding seat, and attendee sued guard's employer for negligent retention). Plaintiff cites no authority indicating that the facts as alleged here could support a negligent retention claim, where O'Connor injured Washington while O'Connor was not working, was not on Boeing property, and was not utilizing any benefit of his Boeing employment.

Although Plaintiff cites a case (Dkt No. 39 at 20) explaining that for purposes of eligibility for workers' compensation in Washington, a worker's injury that occurs while traveling to or from work to a special assignment can be considered to have occurred in the scope of employment, this case does not pertain to a negligent retention claim and bears no similarity to the facts at issue

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 5

here, where Washington was not on a special errand of his employer at the time of his death. *See Cochran Elec. Co. v. Mahoney*, 121 P.3d 747 (Wash. Ct. App. 2005).

And although, as recently acknowledged by the Ninth Circuit, an employer generally has no duty to control the conduct of a third person to protect an employee, Washington law recognizes "a number of protective special relationships" as exceptions to that rule. *Drammeh v. Uber Techs., Inc.*, No. 22-36038, 2024 WL 4003548, at *1 (9th Cir. Aug. 30, 2024). "[A] special relationship under Washington law requires the 'traits of dependence and control.'" *Id*. at *2 (quoting *Barlow v. State*, 2 540 P.3d 783, 788 (Wash. 2024)). The *Drammeh* court noted that the relationship at issue in that case—rideshare companies and their drivers—was analogous to an employer/employee relationship and a contractor/subcontractor relationship, such that a special relationship existed that imposed a duty on rideshare companies "to use reasonable care in pairing their drivers with riders." *Id*. (citing *Vargas v. Inland Wash., LLC,* 452 P.3d 1205, 1212 (Wash. 2019) (explaining that "when a general contractor engages a subcontractor and retains control over some part of the work, the general contractor has a duty, within the scope of that control, to provide a safe place of work" (cleaned up))). Plaintiff has not argued that Boeing owed Washington a duty of care similar to that found in *Drammeh*, but even if Boeing did owe such a duty, the duty would extend to protecting Washington from foreseeable workplace dangers, not dangers faced in public. *See, e.g.*, *Bartlett v. Hantover*, 513 P.2d 844, 849 (Wash. Ct. App. 1973) ("The employer has a duty to make reasonable provision against foreseeable dangers of criminal misconduct to which the employment exposes the employee[,] [i]f the nature of the work is such that it exposes the employee to the risk of injury from the criminal acts of third persons[.]"), *rev'd on other grounds*, 526 P.2d 1217 (Wash. 1974)).

While it is true that an employer may be held liable for its employees' actions outside of work premises and during non-work hours where a special relationship obligates an employer to

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

protect the plaintiff from harms caused by its employees (*e.g.*, in a school or church setting), Plaintiff has cited no case suggesting that Boeing's relationship with Washington obligated it to provide such protection. *See, e.g.*, *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 985 P.2d 262, 275 (Wash. 1999) ("Where a protective special relationship exists, a principal is not free to ignore the risk posed by its agents, place such agents into association with vulnerable persons it would otherwise be required to protect, and then escape liability simply because the harm was accomplished off premises or after-hours."). Rather, Plaintiff has cited no case with an employment relationship similar to the relationship here where a court has imposed a duty on an employer to control an employee *outside* the course of the employee's employment in the context of a negligent retention claim, and the Court is not aware of any.

Because the amended complaint not only fails to allege facts indicating that Boeing's continued retention of O'Connor was the proximate cause of Washington's death, but instead alleges facts suggesting that Boeing's retention of O'Connor was *not* the proximate cause of Washington's death, the amended complaint fails to state a plausible claim for negligent retention and amendment could not cure the deficiency in this claim.

C.    **The Amended Complaint Does Not State a Claim for Discrimination.**

The Washington Law Against Discrimination ("WLAD") prohibits discrimination in the terms or conditions of employment on account of race, among other characteristics. WASH. REV. CODE § 49.60.180. Under the burden-shifting analysis applicable to WLAD claims, the plaintiff bears the initial burden to show that (1) the plaintiff is a member of a protected group, (2) the plaintiff was qualified for the plaintiff's position (satisfactorily performing the job), (3) suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably or other circumstances surrounding the adverse action give rise to an inference of discrimination. *Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. 2:14-cv-

00455RSM, 2015 WL 402782, at *3 (W.D. Wash. Jan. 29, 2015). As an alternative to this burden-shifting analysis, the plaintiff may demonstrate the employer's discriminatory intent by producing "direct or circumstantial evidence" of discrimination. *Id*.

Boeing argues that Plaintiff's discrimination claim must be dismissed because the amended complaint fails to identify an adverse employment action that could support the claim. Dkt. No. 33 at 21–23. The amended complaint alleges that Washington suffered an adverse employment action because he was unable "to work without fear of harm from another employee." Dkt. No. 28 ¶ 4.8. Plaintiff contends that requiring an employee to work while fearing harm from a co-worker can be an adverse employment action, but the authority cited for that proposition is inapplicable here. Dkt. No. 39 at 23 (citing *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013)). In *Dahlia*, an employee claimed that a supervisor's threats chilled her constitutionally protected speech. 735 F.3d at 1065. The Ninth Circuit agreed that the employee's allegations of retaliatory threats of harm from a co-worker were sufficient to deter a reasonable employee from engaging in protected speech, such that the employee had suffered an adverse employment action. *Id*. at 1079. In *Dahlia*, the plaintiff alleged threats of harm in retaliation for whistleblowing (which the Ninth Circuit found to be constitutionally protected speech), and it was the First Amendment retaliation that the Ninth Circuit found to be the adverse employment action. *Id*. at 1078–79. *Dahlia* does not, therefore, stand for the proposition that whenever an employee has reason to fear another co-worker, the employer has taken an adverse employment action against the employee. The Court is not aware of any authority that would support such a proposition.

Plaintiff's opposition brief also argues that two instances of inaction by Boeing materially disadvantaged Washington and therefore constitute an adverse employment action. Specifically, Plaintiff alleges that Boeing failed to offer Washington a schedule or location change to allow him to avoid O'Connor and that Boeing employees contacted Pettit during non-work hours to check on

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 8

her safety but did not check on Washington. Dkt. No. 39 at 23 (citing *Nahum v. Boeing Co.*, No. 2:19-CV-1114-BJR, 2019 WL 6878242, at *3 (W.D. Wash. Dec. 17, 2019) (citing *Jinadasa v. Brigham Young Univ. Haw.*, No. 14-00441 SOM/BM, 2015 WL 3407832, at *4 (D. Haw. May 27, 2015) (defining an adverse employment action as "a material employment disadvantage, such as a tangible change in duties, working conditions or pay"))). Neither *Nahum* nor *Jinadasa* support the proposition that an employer's failure to offer a change to an employee's working conditions or a co-worker's failure to contact an employee during non-work hours could amount to an adverse employment action. Although Plaintiff emphasizes that an adverse employment action need not cause a "significant" employment disadvantage (Dkt. No. 39 at 23), the significance of the inaction alleged here is not the issue. Instead, the problem is that Plaintiff has failed to cite any authority to support the assertion that Boeing's failure to offer a schedule change or failure to contact Washington during non-work hours could constitute an adverse employment action. While an employer's denial of an employee's request to change a work schedule can constitute an adverse employment action, the Court is not aware of any authority indicating that an employer's failure to affirmatively offer an employee a schedule change can as well. *See, e.g.*, *Kurdi v. Cal. Dep't of Transp.*, No. 1:22-cv-00729 JLT EPG, 2023 WL 267538, at *9 (E.D. Cal. Jan. 18, 2023) (citing *Smith v. Cnty. of Santa Clara*, No. 5:11-cv-05643-EJD, 2016 WL 4076193, at *5 (N.D. Cal. Aug. 1, 2016)).

Moreover, Boeing has cited authority indicating that an adverse employment action must result in "a discharge, demotion, or change [in the employee's] benefits or responsibilities." *Marin v. King Cnty.*, 378 P.3d 203, 212 (Wash. Ct. App. 2016). An employer's inaction can constitute an adverse employment action, but the inaction must nonetheless adversely affect the employee's conditions of employment. *See, e.g.*, *Bleeker v. Vilsack*, 468 F. App'x 731, 732 (9th Cir. 2012) ("Even inaction—a failure to renew or extend an employment contract—can count as an adverse

employment action in some circumstances."); *McEnroe v. Microsoft Corp.*, No. CV-09-5053-LRS, 2010 WL 4806864, at *5 (E.D. Wash. Nov. 18, 2010) ("Even had [Defendant] actually ignored Plaintiff's complaints, that mere failure to investigate itself did not adversely affect the terms or conditions of Plaintiff's employment.").

For these reasons, the amended complaint fails to identify a change in any condition or benefit of Washington's employment that resulted from Boeing's action or inaction, and thus fails to identify the adverse employment action needed to state a discrimination claim. The Court has no basis to find that granting leave to amend again would cure this deficiency. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." (cleaned up)).

**D.    Plaintiff's Claims Are Dismissed Without Leave to Amend.**

As explained herein, the amended complaint contains deficiencies as to both claims pleaded. Because the Court has already provided Plaintiff with one opportunity to cure these deficiencies, and these deficiencies cannot be cured via further amendment, the Court will now dismiss them with prejudice. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ("Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." (cleaned up)).

### III.    CONCLUSION

For these reasons, the Court GRANTS Defendant's motion to dismiss. Dkt. No. 33.

Dated this 18th day of September, 2024.

Kymberly K. Evanson
United States District Judge